IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SUNLIGHT ELECTRICAL           :        CIVIL ACTION
CONTRACTING CO., INC.         :
                              :
        v.                    :
                              :
JOHN J. TURCHI, JR., et al.   :        NO. 08-5834

MEMORANDUM

Dalzell, J.                              September 13, 2011

       Plaintiff Sunlight Electrical Contracting Co., Inc.

("Sunlight") sues twelve defendants, including Turchi Properties,

Turchi, Inc., and John J. Turchi, Jr.,[1] asserting what appear to

be[2] twenty distinct claims[3] arising out of work Sunlight

_____

       [1] The other nine defendants are Walnut Construction
Corp. ("Walnut Construction"); Carriage House Condominiums, L.P.
("CHC LP"); Carriage House Condominiums, G.P., Inc. ("CHC GP");
23S23 Construction, Inc. ("23S23"); 400 Walnut Corporation ("400
Walnut"); 1700 Associates, LP ("1700 Associates"); 1700
Corporation ("1700 Corp."); 1930-34 Associates, LP ("1930-34
Associates"); and 1930-34 Corporation ("1930-34 Corp."). On
March 25, 2011, we granted Sunlight's motion to dismiss a
thirteenth defendant, 400 Walnut Associates, LP ("400 Walnut
Associates"), without prejudice. 400 Walnut Associates had filed
a Chapter 11 bankruptcy petition on July 23, 2010, and while the
bankruptcy court had denied Sunlight's motion to modify the
automatic stay in that court to permit Sunlight to litigate its
claims in this case against 400 Walnut Associates, it granted a
motion to modify the stay so as to allow Sunlight to move to
dismiss 400 Walnut Associates from this case.

       [2] Sunlight does not trouble to identify what underlies
the causes of action in each count of its complaint, instead
merely identifying the defendants to which each count is
directed. Indeed, Sunlight has taken umbrage at defendants'
efforts to clarify for the Court the causes of action which
                                        (continued...)

²  (...continued)
Sunlight asserts, suggesting that there is not "any Federal Rule of Civil Procedure that requires that a complaint plead or identify the legal theory/theories on which a plaintiff is proceeding, or that counts of the complaint bear captions disclosing the nature of the claim."  Pl.'s Br. in Opp'n to Defs.' Mot. J. on Pleadings ("Pl.'s Br.") at 2.  In fact, Fed. R. Civ. P. 8(a)(2) provides that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief," and the Supreme Court has recently reiterated that the complaint must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)) (ellipsis omitted); see also Christopher v. Harbury, 536 U.S. 403, 418 (2002) (noting that the Court of Appeals below "was frustrated by the failure to identify the predicate claim").  Sunlight's churlish failure to identify "what the claim is" in each of its counts erects a needless obstacle for both the defendants and this Court in parsing the complaint.

³  Sunlight appears to assert the following claims in its complaint: (1) breach of contract or unjust enrichment against 23S23, Pl.'s Compl. ¶¶ 116-23; (2) breach of contract against Turchi, Inc. and CHC LP, id. ¶¶ 124-33; (3) breach of contract against CHC LP, id. ¶¶ 134-39; (4) breach of contract or unjust enrichment against CHC LP, CHC GP, Turchi, Inc., and 23S23, id. ¶¶ 140-48; (5) unjust enrichment against CHC LP, CHC GP, Turchi, Inc., and Turchi, id. ¶¶ 149-57; (6) breach of contract or unjust enrichment against CHC LP, CHC GP, and Turchi, Inc., id. ¶¶ 158-65; (7) veil-piercing and fraud against Turchi, id. ¶¶ 166-173; (8) breach of contract or unjust enrichment against Walnut Construction, id. ¶¶ 174-81; (9) breach of contract or unjust enrichment against 400 Walnut Associates, id. ¶¶ 182-86; (10) breach of contract or unjust enrichment against Walnut Construction, 400 Walnut Associates, and 400 Walnut, id. ¶¶ 187-93; (11) breach of contract or unjust enrichment against Walnut Construction, 400 Walnut Associates, 400 Walnut, and Turchi, Inc., id. ¶¶ 194-202; (12) unjust enrichment against 400 Walnut Associates, 400 Walnut, and Turchi, id. ¶¶ 203-12; (13) veil-piercing and fraud against Turchi, id. ¶¶ 213-17; (14) breach of contract against Walnut Construction, 1930-34

(continued...)

2

performed on a number of construction projects in Philadelphia

for which it allegedly did not receive full payment.  On April 4,

2011, all twelve defendants filed a motion for partial judgment

on the pleadings, asserting that we should dismiss the following

claims as to the following defendants based on six grounds: (1)

all claims against Turchi Properties, inasmuch as Sunlight

actually asserts no claims against this defendant; (2) all claims

outside the applicable statute of limitations; (3) Counts XIV,

XV, XVI, and XVII with respect to all defendants, since Sunlight

allegedly disregarded its duty to arbitrate; (4) unjust

enrichment claims against Turchi and Turchi, Inc., since

defendants allege that neither of these defendants owned the

properties at issue or contracted for Sunlight's services; (5)

---

[3] (...continued)
Associates, 1930-34 Corp., and Turchi, Inc., id. ¶¶ 218-25; (15)
breach of contract or unjust enrichment against Walnut
Construction, 1930-34 Associates, 1930-34 Corp., and Turchi,
Inc., id. ¶¶ 226-31; (16) unjust enrichment against 1930-34
Associates, 1930-34 Corp., and Turchi, id. ¶¶ 232-40; (17) veil-
piercing and fraud against Turchi, id. ¶¶ 241-45; (18) breach of
contract or unjust enrichment against Walnut Construction, 1700
Associates, and 1700 Corp., id. ¶¶ 246-53; (19) unjust enrichment
against Walnut Construction, 1700 Associates, 1700 Corp., and
Turchi, id. ¶¶ 254-60; (20) veil-piercing and fraud against
Turchi, id. ¶¶ 261-65; and (21) violation of the Racketeer
Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §
1962, against Turchi.  Id. ¶¶ 266-304.  On March 25, 2011, we
granted Sunlight's motion to dismiss Count IX, and to dismiss
Counts X, XI, and XII with respect to 400 Walnut Associates.

all veil-piercing claims against Turchi on the basis that
Sunlight has not properly pleaded such claims under Twombly; and
(6) all "direct" claims against Turchi, Inc., which was allegedly
neither a party to any contracts nor an owner of any property at
issue.

Two weeks later, Sunlight filed a response in
opposition to defendant's motion.  We then granted defendants'
motion for leave to file a reply to Sunlight's response.  Thus,
defendants' motion is at last fully briefed.

This is, as noted, a complicated case -- made more so
by Sunlight's preposterous views of federal court pleading --
and our efforts to evaluate Sunlight's complaint have been
hindered by certain defects in its presentation which rests on
conclusory allegations, inartful ambiguity, summarily expressed
arguments and bombast.  Nonetheless, we have taken plaintiff's
arguments and allegations in the most favorable light possible.
In the end, we will grant defendants' motion in part as to the
first, second, fourth, and fifth grounds identified above.  We
will also afford Sunlight leave to explain how Counts IV, VI, and
XV state claims for violations of the Pennsylvania Contractor and
Subcontractor Payment Act, 73 P.S. § 501, et seq., against
Turchi, Inc.

## I.    Factual Background

"A motion for judgment on the pleadings based on the defense that the plaintiff has failed to state a claim is analyzed under the same standards that apply to a Rule 12(b)(6) motion."  Revell v. Port Auth. of N.Y. & N.J., 598 F.3d 128, 134 (3d Cir. 2010).  In evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), we "'accept all factual allegations in the complaint as true and give the pleader the benefit of all reasonable inferences that can be fairly drawn therefrom.'" Ordonez v. Yost, 289 Fed. Appx. 553, 554 (3d Cir. 2008) (quoting Kost v. Kozakiewicz, 1 F. 3d 176, 183 (3d Cir. 1993)).  We may "consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim," Brown v. Daniels, 128 Fed. Appx. 910, 913 (3d Cir. 2005) (quoting Lum v. Bank of America, 361 F.3d 217, 222 n.3 (3d Cir. 2004)) (internal quotation marks omitted), where a document forms the basis of a claim if it is "'integral to or explicitly relied upon in the complaint.'"  Id. (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)) (emphasis omitted). Since Sunlight explicitly refers to contracts and invoices in its complaint that the defendants have attached as exhibits to their

motion,[4] we will consider these documents as "'integral to or explicitly relied upon in the complaint.'"  Id.[5]

As Sunlight explains in its complaint, it is a Pennsylvania corporation and defendant Turchi is a Pennsylvania resident, Pl.'s Compl. ¶¶ 1-2; the other defendants are Delaware or Pennsylvania corporations or limited partnerships, all having their principal places of business at 1700 Walnut Street in Philadelphia.  Id. ¶¶ 3-13.  Sunlight alleges that CHC GP, 1930-34 Corp., 400 Walnut, and 1700 Corp. are the general partners of

---

[4] While Sunlight's complaint references these documents as exhibits, no exhibits appear appended to its already-prolix complaint, which the defendants attached to their notice removing this action from the Philadelphia County Court of Common Pleas on December 16, 2008.  The exhibits attached to defendants' motion appear to track those referenced in plaintiff's complaint.

[5] Sunlight also attaches to its response to defendants' motion several filings and decisions from a related case ("the Gory action") before the Philadelphia County Court of Common Pleas.  Sunlight concedes that "admissions made by Turchi, or which he was deemed to have made in the Gory action are not binding on Turchi in this action."  Pl.'s Br. at 5.  However, it also argues that since "Judge Jones, who is now a member of this Court, found the claims stated in the Gory complaint to be legally sufficient under Pennsylvania law," id., and since Sunlight's complaint in this action "contains allegations of fact that go well beyond what was found to be legally sufficient by Judge Jones," id., its claims are somehow fortified against dismissal for failure to state a claim.  This suggestion is of course ludicrous.  We decline Sunlight's invitation to look to a ruling on a different complaint in a different action under a different standard in deciding the instant motion.

CHC LP, 1930-34 Associates, 400 Walnut Associates, and 1700 Associates, respectively, id. ¶¶ 15, 17, 19, 21, and that CHC LP, 1930-34 Associates, 400 Walnut Associates, and 1700 Associates were each formed to take title to real property located at 23 South 23rd Street, 1930-34 Chestnut Street, 400-414 Walnut Street, and 1700 Walnut Street, with each of these addresses located in Philadelphia.  Id. ¶¶ 16, 18, 20, 22.  Sunlight alleges that "Turchi, Inc. does business from time to time as Turchi Properties, Walnut Construction, 1930-34 Associates, L.P., 23S23 Construction, Inc., Carriage House Condominiums, L.P., and Carriage House Condominiums, G.P.," id. ¶ 14, and that "John J. Turchi, Jr. is the principal officer, employee and owner of each of the defendant corporations."[6]  Id. ¶ 23.

---

[6] Sunlight also alleges that Turchi "dominates and controls the business operations and dealings of each and all of the other named defendants," id. ¶ 24; "uses and operates each and all of the other named defendants as the alter-ego of himself," id. ¶ 25; "conducts the business operations and dealings of each and all of the other named defendants in disregard of their separate legal status," id. ¶ 26; and "conducts the business operations and dealings of each and all of the other named defendants in such improper and unlawful manner as to warrant the setting aside of the protections against personal liability which normally attend the business operations and dealings of business corporations and limited partnerships organized under the laws of Pennsylvania and Delaware."  Id. ¶ 27.  As we will discuss further below, "[l]egal conclusions masquerading as factual conclusions will not suffice to
(continued...)

Sunlight's claims relate to four construction projects in which it participated: the 23 South 23rd Street project, the 400-414 Walnut Street project, the 1930-34 Chestnut Street project, and the 1700 Walnut Street project.  We will consider Sunlight's allegations respecting each of these projects in turn.

## A.   **The 1700 Walnut Street Project**

According to Sunlight, on April 9, 1999 it entered into a contract as "Contractor" with 1700 Associates/Walnut Construction,[7] as "Owner," pursuant to which Sunlight would perform electrical services and work at 1700 Walnut Street and 1700 Associates/Walnut Construction would pay Sunlight $775,000. Id. ¶¶ 101-02; see also Ex. O to Defs.' Mem. ("1700 Contract & Amend.").  On July 1, 1999, 1700 Associates/Walnut Construction agreed to two Change Orders, Nos. 1 and 2, that increased the

---

[6] (...continued)
circumvent a motion to dismiss," Bright v. Westmoreland Cty., 380 F.3d 729, 735 (3d Cir. 2004) (internal quotation marks and citations omitted), so we need not credit such conclusory allegations in ruling on defendants' motion.

[7] The April 9, 1999 contract actually lists "1700 Locust Associates/Walnut Construction Corp." as the "Owner."  See 1700 Contract & Amend. at 1.  This lends some factual support to Sunlight's legal allegation that "Walnut Construction did business as, and was the alter ego of, 1700 Associates, L.P. on the 1700 Walnut Street Project."  Pl.'s Compl. ¶ 105.

amount Sunlight was due under the contract to $791,519.00.  Pl.'s Compl. ¶¶ 103-04; 1700 Contract & Amend. at 4-6.

Sunlight alleges that it performed all of the services and work required of it under the 1700 Contract and Amendment, and that it also performed additional work at 1700 Walnut Street at the direction of one or more authorized representatives of 1700 Associates and Walnut Construction.  Pl.'s Compl. ¶¶ 106-108.  Sunlight claims that between June of 1999 and February of 2000, it submitted nine invoices to Walnut Construction, id. ¶¶ 109-10, 112; see also Ex. P to Defs.' Mem., and that it submitted seven invoices to Walnut Construction between September 1, 1999 and January 13, 2000 for the additional work it completed at 1700 Walnut Street.  Id. ¶ 111; see also Ex. Q to Defs.' Mem.  Though Sunlight made repeated demands for payment, Walnut Construction and 1700 Associates failed to pay it in full for the work it had performed at 1700 Walnut Street.  Between February of 2000 and June 15, 2004, however, Turchi acknowledged the debts owed to Sunlight for its work on 1700 Walnut Street, and promised that they would be paid in full.  Id. ¶¶ 114-15.

B.  __The 400-414 Walnut Street Project__

Sunlight alleges that on July 13, 2001 it submitted a written proposal to Walnut Construction to perform electrical services and work at a project at 400-414 Walnut Street (sometimes referred to as the "Greentree Project," id. ¶ 64), and that this proposal included two scopes of additional work identified as "Alternate No. 1" and "Alternate No. 2" in the amounts of $10,000 and $6,000, respectively.  Id. ¶ 65.  On August 8, 2001, Sunlight entered into a written agreement as "Contractor" with Walnut Construction as "Owner" whereby Sunlight would provide the work described in its July 13, 2001 proposal -- but not the work identified in Alternates No. 1 and 2 -- in exchange for $827,000.  Id. ¶ 66; see also Ex. G to Defs.' Mem. ("Greentree Contract").

Between August 8, 2001 and June 24, 2002, Sunlight alleges that it fully performed all of the work and services required of it under the Greentree Contract, and that between May and October of 2002, at the direction of authorized representatives of Walnut Construction and 400 Walnut Associates, it completed several items of extra work -- including the additional work and services that had been identified in Alternates No. 1 and 2 of its July 13, 2001 proposal.  Pl.'s

10

Compl. ¶¶ 67-69.  According to Sunlight, between August of 2001 and June of the following year, it submitted eleven invoices/applications for payment to Walnut Construction for work it had performed at 400-414 Walnut Street, including extra work, although the additional work Sunlight had performed that had been described in Alternate No. 2 of its July 13, 2001 proposal was not included in any of these invoices.  Id. ¶¶ 70-72; see also Ex. H to Defs.' Mem..

Sunlight also avers that between April and October of 2002, it performed additional work and services on a "time and material basis" ("T&M work") at 400-414 Walnut Street at the direction of authorized representatives of Walnut Construction and 400 Walnut Associates, and that it submitted nineteen invoices for this work to Walnut Construction between April 15 and October 18, 2002.  Id. ¶¶ 75-77; see also Ex. I to Defs.' Mem.  Moreover, Sunlight states that it made improvements to the penthouse at 400-414 Walnut Street at the direction of authorized representatives of Walnut Construction, 400 Walnut Associates, and Turchi, Inc., and that it submitted nine invoices to Walnut Construction or Turchi, Inc. for this work between October 18, 2002 and August 11, 2003.  Pl.'s Compl. ¶¶ 80-82; see also Ex. J to Defs.' Mem.

11

Sunlight claims that it made "repeated demands for payment" for the contractual, additional, and T&M work that it performed, as well as the improvements made to the penthouse, but it did not receive full payment from 400 Walnut Associates, Turchi, Inc., Walnut Construction, or Turchi on the thirty-nine invoices submitted for this work, and in fact has received no payment for the T&M work and penthouse improvements.  Id. ¶¶ 73, 78, 83.  However, between October of 2002 and June 15, 2004, Turchi repeatedly acknowledged the debts due to Sunlight for the work it had performed at 400-414 Walnut Street, and promised that Sunlight would be paid in full for its work.  Id. ¶¶ 74, 79, 84.

### C.   **The 1930-34 Chestnut Street Project**

Sunlight alleges that on September 4, 2002, it entered into another contract as a "Subcontractor" -- this time with Walnut Construction and 1930-34 Associates as "Contractor" -- and agreed to perform electrical services and work involved in the conversion of a vacant office building at 1930-34 Chestnut Street into luxury apartments and commercial space in exchange for payment of $1,720,000 .  Id. ¶ 85; see also Ex. K to Defs.' Mem. ("1930-34 Contract").  In connection with this project, Sunlight (as "Subcontractor"), 1930-34 Associates (as "Owner"), and

12

Turchi, Inc. (as "Contractor") executed a waiver of liens.[8]  Id. ¶ 88; see also Ex. L. to Defs.' Mem.

Sunlight avers that it performed all the work required of it under the 1930-34 Contract, that it completed several items of additional work at the direction of authorized representatives of Walnut Construction, Turchi, Inc., or 1930-34 Associates, and that it completed T&M work at the 1930-34 Chestnut Street project at the direction of authorized representatives of the same entities.  Id. ¶¶ 89-91, 96-97.  Sunlight submitted fourteen invoices to Walnut Construction between October 23, 2002 and January 23, 2004 for the contractual and additional work it completed at 1930-34 Chestnut Street, id. ¶ 92, and submitted five more invoices to Walnut Construction between November 28, 2003 and March 9, 2004 for the T&M work it had completed.  Id. ¶ ¶ 98; see also Ex. M to Defs.' Mem.  As might be expected, Sunlight alleges that it made repeated demands for payment, but

---

[8] Sunlight also alleges that "[f]rom time to time, Turchi, Inc. did business as Walnut Construction and 1930-34 Associates, L.P., during and in connection with the 1930-34 Chestnut Street Project," Pl.'s Compl. ¶ 86, though Sunlight proffers no additional details that might explain what it means by this.  Sunlight also asserts, conclusorily, that "Walnut Construction was the alter ego of 1930-34 Associates, L.P. in connection with the 1930-34 Chestnut Street Project."  Id. ¶ 87. We will not credit this allegation.  See supra note 6.

that Walnut Construction, 1930-34 Associates, and Turchi, Inc.
have not paid it the total amount it is due for the contractual
and additional work it completed at the 1930-34 Chestnut Street
project, Pl.'s Compl. ¶¶ 93-94, and have made no payment on
Sunlight's five invoices for T&M work.  Id. ¶ 99.  As with the
1700 Walnut and 400-414 Walnut Street projects, though, Sunlight
claims that between January of 2004 and June 15, 2004, Turchi
acknowledged the debts due to Sunlight for the work it performed
on the 1930-34 Chestnut Street project, and promised that
Sunlight would receive full payment for its work.  Id. ¶¶ 95-100.

   D.   **The 23 South 23rd Street Project**

        Finally, Sunlight alleges that on February 2, 2005, it
entered into a contract with 23S23 to perform electrical services
work in connection with the conversion into condominiums of the
property located at 23 South 23rd Street.  Id. ¶ 30; see also Ex.
A to Defs.' Mem. ("23S23 Contract").  The contract provided that
the guaranteed maximum price of Sunlight's work would be
$1,782,400.  Pl.'s Compl. ¶ 30; 23S23 Contract ¶ 2(d).  Sunlight
claims that while it entered into this contract with 23S23, it
provided its original written proposal concerning the work to
Turchi, Inc. on October 27, 2004, and that Turchi, Inc. accepted

                              14

this proposal on November 5, 2004.  Pl.'s Compl. ¶¶ 28-29.  The

23S23 Contract explains that CHC LP, the "Owner," had engaged

23S23 to be the "Construction Manager" for the project, 23S23

Contract ¶ 1(a), and Sunlight alleges that 23S23 acted as CHC GP

and CHC LP's agent with respect to the project, Pl.'s Compl. ¶ 32

-- though beginning in May of 2005, Hunter Roberts Construction

Group ("HRCG") began providing management services for the

project, id. ¶ 35, and thenceforth acted as CHC LP, CHC GP,

Turchi, Inc., and 23S23's agent.   Id. ¶ 37.

Sunlight claims that between November 18, 2004 and

October 2, 2007, it completed all of the services and work

required of it under the 23S23 Contract, id. ¶ 33, and that for

these services and work: (1) between November of 2004 and April

of 2005 it submitted six invoices/applications for payment to

Turchi, Inc., id. ¶ 34; (2) between May 31, 2005 and April 30,

2005 it submitted twelve invoices/applications for payment to CHC

LP, id. ¶ 37; and (3) between May 31, 2006 and May 23, 2007 it

submitted seven invoices/applications for payment to Turchi,

Inc., id. ¶ 38.  Sunlight also alleges that between November 18,

2004 and October 2, 2007 it completed several items of extra work

at the 23 South 23rd Street project, all at the direction of

authorized representatives of 23S23, HRCG, Turchi, Inc., CHC LP,

15

or CHC GP, and that the final invoice submitted to Turchi, Inc. on May 23, 2007 included these extra and additional items.  Id. ¶¶ 39-42.  Sunlight further avers that between May of 2004 and August of 2007, at the direction of authorized representatives of CHC LP, CHC GP, HRCG, or Turchi, Inc., it performed T&M work at the 23 South 23rd Street project, id. ¶¶ 44-45, and that it submitted twenty-seven invoices for this work to 23S23 upon HRCG's instructions.  Id. ¶¶ 46-47.  Sunlight claims that despite its "repeated demands for payment," 23S23, Turchi, Inc., and CHC LP have failed to pay the total amount due for the work it performed at the 23 South 23rd Street project, id. ¶¶ 43, 51, and that in particular it has received no payment on eleven of the invoices for T&M work, id. ¶ 48, though CHC LP made some payments on the work.  Id. ¶ 49.

In addition to the contractual work, additional work, and T&M work at the 23 South 23rd Street project that Sunlight describes, it alleges that it is also due payment for two additional reasons, delays and condominium customizations.  Thus, Sunlight states that under the 23S23 Contract, it was to finish its work by November of 2005, but because the 23 South 23rd Street project was not completed by that time due to reasons beyond Sunlight's control and responsibility, CHC LP agreed on

16

November 7, 2005 to increase the amount Sunlight was due under the contract by $52,468.65 so as to reflect the additional costs Sunlight would incur due to the deferral of the project's completion date until April of 2006.  Id. ¶¶ 52-54.  When -- again, because of reasons beyond Sunlight's control and responsibility -- the project was not completed by April, 2006, Sunlight claims that it incurred additional labor costs between May 1, 2006 and October 2, 2007, and that it submitted an invoice for these additional costs to Turchi, Inc. on December 13, 2007.  Id. ¶¶ 55-57; see also Ex. D to Defs.' Mem.  According to Sunlight, it has received no payment on this additional invoice from Turchi, Inc., CHC LP, 23S23, or Turchi.  Id. ¶ 58.

Sunlight further claims that Turchi gave purchasers of individual condominium units at 23 South 23rd Street the option of customizing their units, and that Sunlight performed work to customize two of those units at the direction of authorized representatives of HRCG, Turchi, Inc., Turchi Properties, 23S23, CHC LP, and CHC GP.  Id. ¶¶ 59-62.  Despite its "repeated demands for payment," Sunlight alleges it has received no payment for this customization work.  Id. ¶ 63.

17

## II.  <u>Analysis</u>

Fed. R. Civ. P. 12(c) provides that "[a]fter the pleadings are closed -- but early enough not to delay trial -- a party may move for judgment on the pleadings."  As noted, we analyze a Rule 12(c) motion under the same standard as a Rule 12(b)(6) motion.  <u>Revell</u>, 598 F.3d at 134.

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss," giving rise to a "context-specific" inquiry that "requires the reviewing court to draw on its judicial experience and common sense."  <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1950 (2009).  "Factual allegations must be enough to raise a right to relief above the speculative level," <u>Twombly</u>, 550 U.S. at 555, although plaintiffs need only "nudge[] their claims across the line from conceivable to plausible."  <u>Id.</u> at 570.  In essence, a plaintiff must provide "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element."  <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 234 (3d Cir. 2008) (quotation marks omitted).  A pleading may not, however, simply offer "labels and conclusions," <u>Twombly</u>, 550 U.S. at 555; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  <u>Iqbal</u>, 129 S. Ct. at 1949.

## A.   **Claims Against Turchi Properties**

We begin by addressing defendants' request that we dismiss "Turchi Properties, Inc.[9] which is named as a defendant but against which no claims are stated in any of Plaintiff's twenty-two (22) [sic] counts."  Defs.' Mot. for J. on Pleadings ("Defs.' Mot.") at 1.  Sunlight does not contest this point, and our review of its complaint demonstrates that none of its counts is directed against Turchi Properties.  We will accordingly dismiss Turchi Properties as a defendant in this case.

## B.   **Claims Barred by the Statute of Limitations**

Defendants explain that under 42 Pa. Cons. Stat. Ann. § 5525, "the statute of limitations for all contract claims, including quasi-contract and unjust enrichment, is four years," and that under § 5524 "the statute of limitations for all state tort actions, including those alleging fraud, is two years.  That applies to veil piercing claims that allege fraud."  Defs.' Mem. at 7-8.  Defendants note that "Sunlight filed its Writ of Summons on May 30, 2008," id. at 7, and that according to Sunlight's

_____

[9] While the defendants refer to this entity as "Turchi Properties, Inc.," it is listed in Sunlight's complaint and on the docket as "Turchi Properties"; we will assume these are the same entity, and adopt Sunlight's terminology in this opinion.

complaint, the last invoice for (1) the 1700 Walnut Street
project was submitted on January 13, 2000; (2) the 1930-34
Chestnut Street project was submitted on February 11, 2004; and
(3) the 400-414 Walnut Street project was submitted on October
18, 2002.  Id. at 8.  The defendants thus urge that we grant
judgment in their favor on Counts VIII-XX.   Id.

Sunlight responds that "a cause of action does not
accrue as of the date an invoice is 'submitted', it accrues, at
the earliest, from the time there is a default in making payment
on the invoice when payment is due," and that "[p]ayment on the
invoice may not be due, though 'submitted', until some stipulated
date or until certain conditions have been satisfied or have
occurred."  Pl.'s Br. at 9.  It consequently suggests that this
Court must have some "basis other than the dates on which
Sunlight submitted its last invoice(s)" before we can rule as a
matter of law that the claims based on those invoices are barred
by the expiration of the applicable limitations period.   Id.

Sunlight adds, moreover, that the allegations in its
complaint -- that Turchi made "repeated representations,
warranties and promises to Sunlight's officer and owner, Michael
DiSandro, that Sunlight would be paid in full for all work
performed and installed," id. at 10 -- "state 'plausible' claims

for relief on the basis of the doctrine of promissory estoppel, and clearly implicate the 'discovery rule.'" <u>Id.</u> at 9.  Sunlight also asserts that its "claims are saved by operation of the continuing violations doctrine," <u>id.</u> at 11, since "the fraudulent and otherwise unlawful conduct of Turchi and the 'enterprises' he dominates and controls is 'more than the occurrence of isolated or sporadic acts.'" <u>Id.</u> (quoting <u>Larsen v. State Employees' Retirement Sys.</u>, 553 F. Supp. 2d 403, 417 (M.D. Pa. 2008)).

### 1.   The Complaint and the Statute of Limitations

As our Court of Appeals explained in <u>Oshiver v. Levin, Fishbein, Sedran & Berman</u>, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994),

> While the language of Fed. R. Civ. P. 8(c) indicates that a statute of limitations defense cannot be used in the context of a Rule 12(b)(6) motion to dismiss, an exception is made where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading.

Sunlight's complaint, and the exhibits upon which it relies, makes plain that (1) with respect to the 1700 Walnut Street project, Sunlight submitted sixteen invoices to Walnut Construction between June of 1999 and January 13, 2000, Pl.'s Compl. ¶¶ 109-112, some of which stated that "current payment shown herein is now due," <u>see</u> Ex. P to Defs.' Mem., but others of

21

which did not specify when payment was due, <u>see</u> Ex. Q to Defs.'
Mem.; (2) with respect to the 400-414 Walnut Street project,
Sunlight submitted thirty-nine invoices to Walnut Construction or
Turchi, Inc. between August of 2001 and August two years later
for the work it had done, Pl.'s Compl. ¶¶ 70-82, with payment
terms varying from "current payment shown herein is now due," Ex.
H to Defs.' Mem., to "[n]et 30 days," <u>see</u> Exs. I & J to Defs.'
Mem.; and (3) with respect to the 1930-34 Chestnut Street
project, Sunlight submitted nineteen invoices to Walnut
Construction between October 23, 2002 and March 9, 2004, Pl.'s
Compl. ¶¶ 92, 98, the latter five of which all required payment
"net 30 days."  <u>See</u> Ex. M to Defs.' Mem.

        We thus cannot, based on Sunlight's complaint and
exhibits, determine the payment terms of <u>all</u> of Sunlight's
invoices -- but we can conclude that <u>many</u> of those invoices came
due within thirty days of their submission, which would mean that
payment was due more than four years before Sunlight filed its
summons in this case.  Moreover, Sunlight's own complaint asserts
that Turchi repeatedly "acknowledged the indebtedness due and
owing Sunlight Electrical" (1) beginning in February, 2000,
regarding the 1700 Walnut Street project, Pl.'s Compl. ¶ 114; (2)
beginning in October of 2002, regarding the 400-414 Walnut Street

project, id. ¶ 74; and (3) beginning in January of 2004 regarding
the 1930-34 Chestnut Street project.  Id. ¶ 95.  According to
Sunlight's own allegations, then, some of the debts associated
with each of these projects had come due by early 2004, so that
unless some equitable doctrine tolls the four-year statute of
limitations for contract and unjust enrichment claims,[10] it is
clear from the complaint that some of these claims are time-
barred.

     Sunlight asserts three doctrines that might permit it
to bring those claims: promissory estoppel, the discovery rule,
and the continuing violations doctrine.  An additional theory,
the acknowledgment doctrine, might rescue these claims as well.

### 2.   **Promissory Estoppel**

     We can readily dispose of Sunlight's promissory
estoppel arguments.  Sunlight argues that it "detrimentally

---

[10] While defendants also urge that Sunlight's fraud and
veil-piercing claims are barred by 42 Pa. Cons. Stat. § 5524, the
complaint does not "facially show[] noncompliance with the
limitations period" with respect to these claims, Oshiver, 38
F.3d at 1385 n.1., since Sunlight pleads that each of these
alleged violations either "continu[es] to the present," Pl.'s.
Compl. ¶¶ 170-72, 214, 216, 242, 244, 262-64, or concluded in
October, 2007 -- within two years of Sunlight's filing of a writ
of summons in this case.  Id. ¶¶ 215, 243.  We will thus consider
defendants' arguments as to the statute of limitations only with
respect to Sunlight's contract and unjust enrichment claims.

rel[ied] on Turchi's fraudulent promises of payment in full, even
to the point of agreeing to undertake to construct subsequent
projects, rather than sue for payment." Pl.'s Br. at 10. But
Sunlight's argument is a square peg in the round hole of estoppel
doctrine. As the Supreme Court of Pennsylvania explained in
Crouse v. Cyclops Indus., 745 A.2d 606, 610 (Pa. 2000),

> Where there is no enforceable agreement
> between the parties because the agreement is
> not supported by consideration, the doctrine
> of promissory estoppel is invoked to avoid
> injustice by making enforceable a promise
> made by one party to the other when the
> promisee relies on the promise and therefore
> changes his position to his own detriment.

In this case, Sunlight alleges that there were enforceable
agreements supported by consideration between the parties, and
that Turchi merely acknowledged the particular respective
defendants' obligations to perform under these agreements. While
the defendants argue that those agreements are now unenforceable,
their claim is that they have become so due to the expiration of
the applicable statute of limitations, not to any lack of
consideration. Sunlight seeks not to make an unenforceable
promise enforceable, but rather to use an alleged acknowledgment
of obligation to extend the statute of limitations applicable to

what would have been an enforceable agreement in the absence of
the statute.  Promissory estoppel is thus inapplicable here.

### 3.   The Acknowledgment Doctrine

The proper theory to apply to the gambit that Sunlight
seeks to execute is not that of promissory estoppel, but the
acknowledgment doctrine -- though, in the end, this doctrine also
falls short of rescuing Sunlight's claims from the statute of
limitations.  Under Pennsylvania law, "[a] promise to pay a debt
may toll the statute of limitations.  The promise to pay may be
express, or it may be implied from an acknowledgment of the debt.
However, both promises to pay and acknowledgments of indebtedness
must be unequivocal and unconditional to take the case out of the
statute of limitations."  Gurenlian v. Gurenlian, 595 A.2d 145,
151 (Pa. Super. 1991) (citations and quotation marks omitted).
The meaning of "unequivocal" has been clear in this Commonwealth
since at least 1917: "the acknowledgment must be plainly
referable to the very debt upon which the action is based, and
also must be consistent with a promise to pay on demand and not
accompanied by other expressions indicating a mere willingness to
pay at a future time."  In re Maniatakis' Estate, 101 A. 920, 921
(Pa. 1917) (citations omitted).

As we have already noted, Sunlight's complaint alleges that with respect to the 1700 Walnut Street project, the 400-414 Walnut Street project, and the 1930-34 Chestnut Street project, Turchi "acknowledged the indebtedness due and owing Sunlight Electrical for all of the work performed and installed . . . [and] represented, warranted, and promised that Sunlight Electrical would be paid in full all amounts due and owing for all of the work performed and installed." Pl.'s Compl. ¶¶ 114, 74, 95. The defendants argue that these "conclusory allegations are immaterial to the pending motion." Defs.' Reply Mem. in Support of Defs.' Mot. ("Defs.' Reply") at 11.

As Judge Hochberg has noted, a plaintiff has the "burden to plead and prove that [it] is entitled to equitable tolling." Jacobson v. Celgene Corp., 2010 WL 1492869, at *4 (D.N.J. 2010). Our Court of Appeals has explained that in evaluating equitable tolling arguments at the motion to dismiss stage, "[t]he question to be answered . . . becomes whether the assertions of the complaint, given the required broad sweep, would permit adduction of proofs that would provide a recognized legal basis for avoiding the statutory bar." Leone v. Aetna Cas. & Sur. Co., 599 F.2d 566, 567 (3d Cir. 1979). Sunlight's complaint specifies the dates on which Turchi's alleged promises

26

occurred, suggests that the promises were referable to the construction debts in question, and indicates that the promises to pay were unconditional -- but it does not allege that Turchi promised to pay the debts allegedly owed to Sunlight <u>on demand</u>. Sunlight has thus not provided "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." <u>Phillips</u>, 515 F.3d at 234.

In fact, Sunlight's complaint suggests that Turchi's alleged promises to pay were <u>not</u> on demand.  With respect to each of the above-named three projects, Sunlight asserts that "[d]espite Sunlight Electrical's repeated demands for payment," it has not received the amounts it is due.  Pl.'s Compl. ¶¶ 73, 78, 83, 93-94, 99, 113, 115.  If Sunlight's continuing demands for payment went unanswered, Turchi's alleged promises cannot have offered payment on demand.  Sunlight has thus not pleaded facts that make tolling available to it under the acknowledgment doctrine.

### 4.  **The Discovery Rule**

Sunlight suggests that the discovery doctrine lifts the bar of the limitations period, although it makes little effort to apply the discovery doctrine to the facts of this case other than

27

to declaim that these facts "clearly implicate the 'discovery rule.'"  Pl.'s Mem. at 9.  In truth, this case does <u>not</u> implicate the discovery rule.  As Judge Brody noted in <u>Harry Miller Corp. v. Mancuso Chems. Ltd.</u>, 469 F. Supp. 2d 303, 312-13 (E.D. Pa. 2007) (emphasis, citations and quotation marks omitted),

> Once the statutory period has expired, the discovery rule triggers the tolling of the statute of limitations when the plaintiff is unable, despite the exercise of reasonable diligence, to discover the injury or its cause. . . . The question of whether a plaintiff has exercised reasonable diligence is generally a question for the jury, but the Court may decide that the discovery rule does not apply as a matter of law where reasonable minds would not differ about whether the plaintiff knew or should have known through the exercise of reasonable diligence of his injury and the cause of his injury.

While the reasonable diligence inquiry is normally the province of a jury, it is evident here that Sunlight could <u>not</u> have failed to know of defendants' alleged breaches at the time they occurred.  It was, after all, Sunlight itself that submitted its invoices to the defendants with the payment periods the firm had itself determined, so when defendants failed to make payment within the allotted period the reality of that breach should have been obvious.  <u>See</u>, <u>e.g.</u>, <u>Weis-Buy Services, Inc. v. Paglia</u>, 411 F.3d 415, 424 (3d Cir. 2005) ("When Sellers were not timely paid,

they were on notice that United Fruit, and the responsible

parties inside United Fruit, had breached their . . .

obligations.  At this point the Sellers should have attempted to

discover why payment was not forthcoming and who was

responsible.").

        The discovery rule thus cannot rescue from the statute

of limitations those invoices for which it is plain -- from

Sunlight's complaint and exhibits -- that payment was due before

May 30, 2004.

### 5.   __The Continuing Violations Doctrine__

        Finally, we come to the continuing violations doctrine,

the application of which to the facts of this case is less facile

than the other doctrines we have considered.  Under this

doctrine, "when a defendant's conduct is part of a continuing

practice, an action is timely so long as the last act evidencing

the continuing practice falls within the limitations period; in

such an instance, the court will grant relief for the earlier

related acts that would otherwise be time barred."  __Brenner v.__

__Local 514, United Bhd. of Carpenters & Joiners of Am.__, 927 F.2d

1283, 1295 (3d Cir. 1991).  As Judge Jones explained in __Larsen__,

29

553 F. Supp. 2d at 417 (internal quotation marks, brackets,

citations, and ellipses omitted),

> To establish that a claim falls within the
> continuing violations theory, the plaintiff
> must do two things.  First, he must
> demonstrate that at least one act occurred
> within the filing period: The crucial
> question is whether any present violation
> exists.  Next, the plaintiff must establish
> that the alleged wrong is more than the
> occurrence of isolated or sporadic acts.  In
> examining this second step, courts should
> consider at least three factors: (1) subject
> matter -- whether the violations constitute
> the same type, tending to connect them in a
> continuing violation; (2) frequency --
> whether the acts are recurring or more in the
> nature of isolated incidents; and (3) degree
> of permanence -- whether the act had a degree
> of permanence which should trigger the
> plaintiff's awareness of and duty to assert
> his/her rights.  The third factor,
> permanence, is the most important.  In
> considering this third factor, the court must
> consider the policy rationale behind the
> statute of limitations.  That is, the
> continuing violations doctrine should not
> provide a means for relieving plaintiffs from
> their duty to exercise reasonable diligence
> in pursuing their claims.

Sunlight argues that "[t]he well pleaded allegations of

Sunlight's complaint, when considered in full, including the

allegations that are set forth in count XXI," establish "an

unlawful course of conduct in which Turchi has been engaged since

at least February, 2000, and the allegations establish that

Turchi has continued in his unlawful course of conduct into and after 2005." Pl.'s Br. at 11. The defendants take this as an attempt by Sunlight "to use its RICO allegations to dodge the statute of limitations on its contract and tort claims," and protest that "Sunlight cites no authority holding that pleading a RICO claim tolls the statute of limitations on contract and fraud claims referenced in the RICO claim." Defs.' Reply at 14.

We agree that Sunlight's pleading of a RICO claim is irrelevant to the question of whether its contract and unjust enrichment[11] claims are barred by the applicable statute of limitations, and so will instead focus on the alleged facts underlying these claims. The defendants do not dispute that the claims arising out of the 23 South 23rd Street project occurred within the necessary filing period since Sunlight alleges that it submitted its final invoice for work done on that project on August 17, 2007, Pl.'s Compl. ¶ 46 -- only nine months before it filed its Writ of Summons in this matter on May 30, 2008. Thus,

---

[11] As we have already explained, it is not apparent from the face of Sunlight's complaint that the applicable statute of limitations bars its fraud and veil-piercing claims, so that we will not consider whether the statute affects those claims. See supra note 10.

we must examine the three factors enumerated in <u>Larsen</u>: subject matter, frequency, and degree of permanence.

Regarding subject matter, Sunlight alleges that defendants committed similar violations over the course of the eight years in question: non-payment or partial payment of invoices, authorization of non-contract work without payment, and illegitimate employment of the corporate form to confuse Sunlight as to the identity of its contractual partners and to shield principals from liability.  However, these violations occurred in relation to four entirely different construction projects under four different contracts.  This was not a course of conduct in which a supplier sold a buyer identical units under the same set of terms over an extended period of time -- the prototypical situation in which the continuing violations doctrine might apply.  The existence of significant differences between the violations alleged militates against permitting Sunlight to invoke the continuing violations doctrine here.

With respect to frequency, Sunlight claims that it entered into contracts with the defendants to perform electrical services and work on April 9, 1999; August 8, 2001; September 4, 2002; and February 2, 2005.  It further alleges that between June, 1999 and August, 2007, it submitted 126 invoices for work

32

relating to those projects, amounting to an invoice every twenty-three days for about 2,980 days.  Sunlight claims that many of those invoices were not paid in full, and that forty-four -- or one every sixty-seven days -- were not paid at all.  Defendants' alleged violations, spanning the four projects in question, thus appear to us to be quite frequent.

Finally, with regard to permanence, defendants' projects took place during overlapping periods, and Sunlight exhibited a willingness to enter into a new contract with Turchi, Inc. on November 5, 2004, id. ¶ 29 -- less than four years before it was to initiate suit against the defendants.  But each set of violations took place under a different contract and pertained to a different construction project, so that Sunlight should have been able to discern when one set of violations had concluded merely by considering when its work on one of these projects came to an end.  We cannot excuse Sunlight from the applicable statutes of limitations merely because it chose to enter into a series of agreements as to four discrete projects with a set of related entities that allegedly had a habit of not paying their debts.  The permanence shown with each set of claimed violations -- which under Larsen is the most important factor in determining

33

whether to apply the continuing violations doctrine -- suggests that the doctrine is inapplicable here.

Weighing the three <u>Larsen</u> factors, we conclude as a matter of law that Sunlight's claims fail to exhibit the sameness and lack of permanence needed to justify application of the continuing violations doctrine.  Consequently, to the extent that its breach of contract and unjust enrichment claims are predicated on invoices that, on their face, came due before May 30, 2004 -- four years before Sunlight filed a writ of summons against defendants in this matter on May 30, 2008 -- these claims are barred by 42 Pa. Cons. Stat. § 5525.  We will accordingly grant defendants' motion as to these claims.

### C.    <u>Sunlight's Duty to Arbitrate</u>

Defendants note that "[p]ursuant to Section 6.2 of the parties' written contract, Sunlight agreed with Walnut Construction Corporation to arbitrate any dispute arising out of or related to the Subcontract for work at 1930-34 Chestnut Street," Defs.' Mem. at 8, and that "Section 6.2.3 specifically requires Sunlight to have brought its claims relating to the 1930-34 Chestnut Street project 'within a reasonable time after the claim has arisen.'"  <u>Id.</u> at 9 (quoting Ex. K to Defs.' Mem. ¶

34

6.2.3).  Defendants reason that since "Sunlight has not pleaded that it complied with its duty under that agreement," id. at 8, and "Sunlight's claims relating to the project arose, at the latest, on February 11, 2004 . . . Sunlight cannot now exercise its agreement to arbitrate the disputes it has improperly pleaded in its Complaint," id. at 9, and therefore the defendants are entitled to judgment on Counts XIV through XVII.

Sunlight responds that it has pled that it complied with its duties under ¶ 6.2, since "[a]t paragraphs 225, 231, 240 and 245 of the complaint, Sunlight avers that it 'has performed, satisfied and otherwise discharged all conditions precedent to its right to claim for payment and to have judgment entered in its favor and against' the defendants named in counts XIV, XV, XVI and XVII."  Pl.'s Br. at 12.  Furthermore, Sunlight argues that defendants fail in their answer to "assert either generally or with 'particularity' the 'duty to arbitrate' as a matter of avoidance, defense or otherwise," so that "defendant, by its answer to the complaint, has waived any right to demand that Sunlight now proceed to arbitration."  Id. at 13.

We will first consider Sunlight's claim that defendants waived their right to demand judgment based on its alleged duty

to arbitrate by failing to assert this defense in their answer.[12]
Fed. R. Civ. P. 8(c)(1) provides that "[i]n responding to a
pleading, a party must affirmatively state any avoidance or
affirmative defense, including . . . arbitration and award."
Ordinarily, "'a failure to plead an affirmative defense results
in the waiver of that defense and its exclusion from the case.'"
Cathay Bank v. Inchon, LLC, 2006 WL 2355407, at *1 (D.N.J. 2006)
(Debevoise, J.) (quoting Mooney v. City of New York, 219 F.3d
123, 127 (2d Cir. 2000)); see also Frett v. Gov't of V.I., 839
F.2d 968, 973 n.1 (3d Cir. 1988) ("An answer must expressly set
forth all affirmative defenses, the failure of which results in
the involuntary waiver of such defenses and their exclusion from
the case."), overruled in part on other grounds by Ngiraingas v.
Sanchez, 495 U.S. 182 (1990).  But the Supreme Court has also
stated that "any doubts concerning the scope of arbitrable issues
should be resolved in favor of arbitration, whether the problem
at hand is the construction of the contract language itself or an

_____

        [12] We can dismiss out of hand Sunlight's claim that it
has alleged fulfillment of its duty to arbitrate, since its rote
recitation in its complaint that it "has performed, satisfied and
otherwise discharged all conditions precedent to its right to
claim for payment and to have judgment entered in its favor and
against," Pl.'s Compl. ¶¶ 225, 231, 240, 245, is clearly
conclusory and hence insufficient to defeat defendants' motion.

allegation of waiver, delay, or a like defense to arbitrability."

Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1,

24-25 (1983).  Our Court of Appeals has explained that "prejudice

is the touchstone for determining whether the right to arbitrate

has been waived," Hoxworth v. Blinder, Robinson & Co., 980 F.2d

912, 925 (3d Cir. 1992), and that "'merely answering on the

merits, asserting a counterclaim (or cross-claim) or

participating in discovery, without more, will not necessarily

constitute a waiver.'"   Id. (quoting Gavlik Constr. Co. v. H.F.

Campbell Co., 526 F.2d 777, 783 (3d Cir. 1992)).   In conducting

this prejudice inquiry, we look to six factors:

> [1] [T]he timeliness or lack thereof of a
> motion to arbitrate . . . [; 2] the degree to
> which the party seeking to compel arbitration
> has contested the merits of its opponent's
> claims; [3] whether that party has informed
> its adversary of the intention to seek
> arbitration even if it has not yet filed a
> motion to stay the district court
> proceedings; [4] the extent of its non-merits
> motion practice; [5] its assent to the
> district court's pretrial orders; and [6] the
> extent to which both parties have engaged in
> discovery.

Id. at 926-27 (internal citations omitted); see also Nino v.

Jewelry Exch., Inc., 609 F.3d 191, 208-09 (3d Cir. 2010)

(enumerating and discussing the Hoxworth factors).

Of these factors, the first and third clearly militate in favor of waiver. There can be little doubt that defendants failed to assert the affirmative defense of arbitrability in their answer, see Defs.' Ans. at 48 (asserting eight affirmative defenses, none of which concern arbitrability), and that nearly twenty-seven months elapsed between defendants' answer and the present motion for judgment on the pleadings. Moreover, defendants have not suggested that they communicated their intent to rely on the arbitration clause between Sunlight and Walnut Construction to dismiss any of Sunlight's claims.

The other four factors, however, counsel against waiver. While this case has languished on our docket for thirty-two months, we had issued no case management orders before defendants filed their motion, and the parties had done little litigating. This action's protracted tenure has resulted mostly from the long periods it has spent in civil suspense as various defendants' bankruptcy filings have been sorted out. At the time defendants filed this motion for judgment on the pleadings, the parties had conducted no discovery and -- excepting the third-party defendant HRCG, which filed a motion to dismiss on March 23, 2009 -- engaged in no motion practice concerning any topic other than the proceedings in Bankruptcy Court. To date, then,

38

defendants' participation in this action appears to consist precisely of "merely answering on the merits."  Id.

The only prejudice that Sunlight has suffered from defendants' failure to assert the defense of arbitrability in their answer, then, is that they have learned of this defense two years later than they should have.  Because this matter has largely been in abeyance during those two years, however, Sunlight has expended few resources litigating the matters defendants allege to be subject to arbitration.  Under these circumstances, we will not conclude that defendants have waived the option to assert their right to arbitrate.

We thus turn to defendants' claim that they are entitled to judgment on Counts XIV through XVII because of the alleged arbitration agreement between Sunlight and Walnut Construction.  Defendants' claim is anomalous: they do not appear to seek arbitration, but rather argue both that we should dismiss Sunlight's claims due to its failure to arbitrate and that "Sunlight cannot now exercise its agreement to arbitrate the disputes it has improperly pleaded in its Complaint."  Defs.' Mem. at 9.  Defendants' argument misapprehends both the effect of the defense of untimeliness upon a claim and our role in ruling on such a defense.

As the Fourth Circuit has explained, untimeliness is included within the "broad category of waiver defenses that may be raised to defeat compelled arbitration." Glass v. Kidder Peabody & Co., Inc., 114 F.3d 446, 455 (4th Cir. 1997). But this defense may not necessarily also be employed to prevent a party from advancing claims by a conventional lawsuit. "[I]t is true that when arbitration is the exclusive remedy, and the arbitration agreement contains a provision limiting the time when the arbitration may be commenced, a party who permits that time to elapse without commencing an arbitration proceeding cannot avoid that limitation by bringing an action at law." Rhodes v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 427 N.Y.S.2d 826, 827 (N.Y. App. Div. 1980). However, defendants have not explained why the agreement between Sunlight and Walnut Construction makes arbitration an exclusive remedy. Compare Ex. K to Defs.' Mem. ¶ 6.2.1 ("Any claim arising out of or related to this Subcontract, except claims as otherwise provided in Subparagraph 4.1.5 and except those waived in this Subcontract, shall be subject to arbitration.") (emphasis added), with River Brand Rice Mills, Inc. v. Latrobe Brewing Co., 110 N.E.2d 545, 546-47 (N.Y. 1953) (finding that arbitration was the sole remedy where arbitration clause provided that "[a]ny controversy or

40

claim arising out of or relating to this contract or the breach thereof, shall be <u>settled</u> by arbitration") (emphasis added).  Nor have defendants identified any authority suggesting that, in the absence of such exclusivity, a claim may be barred at law because it was not timely submitted to arbitration.

Furthermore, while "the question of arbitrability . . . is undeniably an issue for judicial determination," <u>AT&T Tech., Inc. v. Commc'ns Workers of Am.</u>, 475 U.S. 643, 649 (1986), "[o]nce it is determined . . . that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator." <u>John Wiley & Sons, Inc. v. Livingston</u>, 376 U.S. 543, 557 (1964). Since "[t]imeliness is a procedural issue," <u>Whittle v. Local 641, Int'l Bhd. of Teamsters, Chauffers, Warehousemen & Helpers of Am.</u>, 56 F.3d 487, 490 n.2 (3d Cir. 1995), we would exceed our authority by ruling, as defendants request, that "a reasonable time after the claim has arisen," Ex. K to Defs.' Mem. ¶ 6.2.3, has now passed.  We therefore decline so to rule.

While we have concluded that defendants have not waived the option of asserting their right to arbitrate, we have already noted that defendants do not actually assert this right.

41

Instead, they merely seek the dismissal of Sunlight's claims, without attempting to compel arbitration. Since the grounds on which they seek this dismissal are invalid, we will deny defendants' motion insofar as it seeks to dismiss Counts XIV through XVII, while expressing no opinion at this juncture as to the propriety of compelling the arbitration of these claims.

### D. **Sunlight's Unjust Enrichment Claims**

Defendants make two claims with respect to Sunlight's unjust enrichment claims[13] in Counts IV, V, XII, XVI, and XIX. First, defendants note that Sunlight "admits that it entered into a written construction contract . . . to provide goods and services to the property" at issue (a) in Counts IV and V with 23S23, id. at 9; (b) in Count XII with Walnut Construction, id. at 10-11; (c) in Count XVI with Walnut Construction and 1930-34 Associates, id. at 11; and (d) at issue in Count XIX with 1700 Associates and Walnut Construction. Id. Sunlight responds: "[t]hat a written contract may exist as between Sunlight and some defendant other than Turchi and Turchi, Inc. is of no legal consequence whatsoever to the issue of whether Sunlight has

---

[13] As we have already dismissed some of these claims in Section II.B due to the application of 42 Pa. Cons. Stat. Ann. § 5525, we here consider only those claims that remain.

stated 'plausible' claims for unjust enrichment against Turchi

and Turchi, Inc." Pl.'s Br. at 14-15. In its reply, defendants

aver that "[u]njust enrichment cases are brought on the basis

that there is no written contract and thus a contract must be

implied in law," so that "[g]iven the admitted contracts,

Sunlight cannot state a claim for unjust enrichment . . . against

Mr. Turchi and Turchi, Inc., who are third parties to the

contracts." Defs.' Reply at 16.

While this latter argument may have merit, defendants

do not appear to have made it fully and explicitly enough in

their motion for judgment on the pleadings to warrant our

consideration. As Judge Robreno has explained, "[a] reply brief

is intended only to provide an opportunity to respond to the

arguments raised in the response brief; it is not intended as a

forum to raise new issues." United States v. Martin, 454 F.

Supp. 2d 278, 281 n.3 (E.D. Pa. 2006); see also Bishop v. Sam's

East, Inc., 2009 WL 1795316, at *5 (E.D. Pa. 2009) (Surrick, J.)

(ruling that argument raised for the first time in reply brief

had been waived). While defendants explain in their motion that

we should dismiss the unjust enrichment claims against Turchi and

Turchi, Inc. because these defendants "did not own any properties

at issue and . . . did not contract for any services," Def.'s

43

Mem. at 1, and while defendants note in that motion that Sunlight actually contracted with entities other than Turchi and Turchi, Inc., nowhere in their motion do defendants suggest that the existence of these contracts affirmatively <u>bars</u> Sunlight from claiming unjust enrichment against Turchi and Turchi, Inc. Rather, this argument was plainly stated for the first time in defendants' reply.  Because Sunlight was not on notice at the time it filed its response that defendants intended to rely on this line of reasoning, we conclude that the defendants have waived this argument and we will consider it no further.

The second argument that defendants advance is that the "recitations of benefit to Mr. Turchi and Turchi, Inc. [in the complaint], constitute the sort of 'legal conclusion' or 'naked assertion' that must be disregarded under <u>Iqbal</u>."  <u>Id.</u> at 12. Sunlight responds that "[w]hen the well pleaded allegations of the counts at issue on this part of defendants' motion are read in their total contexts, meaning with all of the allegations that are incorporated therein by reference, with all of the allegations being accepted as true, the claims stated against Turchi and Turchi, Inc., . . . are more than just 'plausible' under the substantive law of Pennsylvania."  Pl.'s Br. at 13-14.

To claim unjust enrichment, a plaintiff must prove: "(1) benefits conferred upon defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." Harry Miller Corp., 469 F. Supp. 2d at 319 (citing Mitchell v. Moore, 729 A.2d 1200, 1203 (Pa. Super. 1999). Though Sunlight asserts that its factual averments are sufficient and promises that it will bring forth evidence proving that Turchi and Turchi, Inc. received the requisite benefits,[14] it points to no concrete factual allegations from its complaint that, if proven, would establish this element. Examination of Sunlight's complaint, moreover, demonstrates that it contains only conclusory allegations as to this element. Sunlight states with respect to Count V,[15] for example, that "Turchi, Inc. and

---

[14] See Pl.'s Br. at 15 ("[W]hat Sunlight can show, and what Sunlight will prove and is entitled to prove on the basis of the allegations in the complaint, is that Sunlight conferred substantial financial benefits on Turchi and/or Turchi, Inc. which were accepted and retained by Turchi and/or Turchi, Inc. under circumstances that were and are not just 'inequitable' but fundamentally illegal.") (emphasis added).

[15] Sunlight makes essentially the same allegations with respect to each of its other unjust enrichment claims against Turchi and/or Turchi, Inc. See id. ¶¶ 206, 209 (repeating

(continued...)

John J. Turchi, Jr. have received the benefit of the work performed and completed by Sunlight Electrical," Pl.'s Compl. ¶ 152, and that "John J. Turchi, Jr. [and] Turchi, Inc. . . . have been unjustly enriched at the expense and by reason of the work performed and completed by Sunlight Electrical." Id. ¶ 155. Such assertions do not carry Sunlight's burden to provide "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Phillips, 515 F.3d 224, 234 (quotation marks omitted). Instead, Sunlight has provided only "[t]hreadbare recitals of the elements" of unjust enrichment. Iqbal, 129 S. Ct. at 1949. Because a claim predicated upon such conclusory allegations cannot survive a motion for judgment on the pleadings, we will grant defendants' motion and dismiss Counts IV, V, XII, XVI, and XIX insofar as they allege unjust enrichment by Turchi and Turchi, Inc.

---

[15] (...continued)
similar allegations against Turchi with respect to Count XII); id. ¶¶ 235, 238 (repeating similar allegations against Turchi with respect to Count XVI); id. ¶ 257 (alleging with respect to Count XIX that "[t]he work performed and completed by Sunlight Electrical on the premises situated at 1700 Walnut Street for which Sunlight Electrical has not been paid has enhanced the assets and financial worth of John J. Turchi, Jr."); id. ¶ 258 (alleging with respect to Count XIX that "John J. Turchi, Jr. . . . . [has] been unjustly enriched at the expense and by reason of the work performed and completed by Sunlight Electrical on the premises situated at 1700 Walnut Street").

**E.    Sunlight's Fraud and Veil-Piercing Claims**

With respect to Counts VII,[16] XIII, XVII, and XX, the defendants argue that "[i]n each of its piercing/alter ego claims against John Turchi Jr., Sunlight has plead [sic] the identical conclusions of law with respect to each of the projects at 23S23rd Street, 400 Walnut Street, 1930-34 Chestnut Street and 1700 Walnut Street."  Defs.' Mem. at 16.  Defendants contend that since "[t]hese allegations are nothing more than conclusions of law, which do not allege any facts," id. at 17, they are "unquestionably insufficient to state piercing or alter ego claims against John Turchi."  Id.  Sunlight responds that neither "pleading practice in the courts of Pennsylvania" nor "practice in the United States District Courts require that evidence be pleaded in a complaint in order to survive a motion to dismiss or for judgment on the pleadings," Pl.'s Br. at 17 (emphasis in original), and that "[w]hat Sunlight has pleaded is the factual structure for those claims on which Turchi is exposed to liability, and what Sunlight has pleaded is certainly 'enough

---

[16] Though defendants assert that they are entitled to judgment on Sunlight's veil-piercing claim in Count VI, Defs.' Mem. at 14, Sunlight did not actually assert such a claim under Count VI.  Defendants rectify this error on the next page of their memorandum, seeking judgment on Count VII.  Id. at 15.

47

facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" Id.

As the Supreme Court of Pennsylvania has explained, "[t]he corporate entity or personality will be disregarded only when the entity is used to defeat public convenience, justify wrong, protect fraud or defend crime." Sams v. Redev. Auth. of City of New Kensington, 244 A.2d 779, 781 (Pa. 1968). The factors to be considered in determining whether to disregard the corporate form include "'undercapitalization, failure to adhere to corporate formalities, substantial intermingling of corporate and personal affairs and use of the corporate form to perpetrate a fraud.'" Lumax Indus., Inc. v. Aultman, 669 A.2d 893, 895 (Pa. 1995) (quoting Kaites v. Dep't of Envtl. Res., 529 A.2d 1148, 1151 (Pa. Commw. Ct. 1987)). However, "averments reciting elements of the veil-piercing test, without any supporting facts, constitute legal conclusions. Even under a notice pleading standard, as interpreted in Twombly, such averments cannot support a veil-piercing claim." Shenango Inc. v. Am. Coal Sales Co., 2007 WL 2310869, at *4 (W.D. Pa. 2007).

Though Sunlight proclaims that its veil-piercing claims succeed in stating a claim, it fails to direct the Court -- much as it did with respect to its unjust enrichment claims against

48

Turchi and Turchi, Inc. -- to any specific factual allegations in
its complaint that support these claims.  As with its unjust
enrichment claims, moreover, inspection of the complaint reveals
that Sunlight has substantiated its veil-piercing claims purely
with conclusory statements.  Counts XIII, XVII, and XX each
contain identical language, albeit substituting different
entities and time periods, to that presented in Count VII:

> At all times relevant to the claims stated herein, and
> from April 6, 2004 and continuing to the present, 23S23
> was and is:

>> a)   grossly undercapitalized, particularly
>>      with regard to having the financial
>>      capacity to perform and discharge its
>>      duties as 'construction manager' under
>>      the 23 South 23rd Street Contract;

>> b)   a sham entity and façade which is
>>      entirely dominated, operated, and
>>      controlled by Turchi for the sole
>>      purpose of furthering and enhancing his
>>      own personal wealth and financial
>>      interests;

>> c)   without monetary assets, other than
>>      funds that are infused, from time to
>>      time, by Turchi or other entities owned,
>>      dominated, and controlled by Turchi, as
>>      and when it serves Turchi's personal
>>      interests, purposes, and benefit;

>> d)   without any bona fide and functioning
>>      officers and directors;

>> e)   operated by Turchi without any proper
>>      regard for corporate formalities, and

> > without regard for the separateness of
> > identity between 23S23 and other of the
> > corporate and partnership entities which
> > Turchi completely dominates and
> > controls; and
>
> f)    knowingly used by Turchi as his alter
> >     ego and instrumentality for the
> >     fraudulent and otherwise unlawful
> >     purpose(s) of obtaining goods, work, and
> >     services without paying the full and
> >     agreed on price and value therefor, all
> >     with the intent to enhance his own
> >     personal wealth at the expense of those
> >     who are contracted to build his real
> >     estate development project(s).

Pl.'s Compl. ¶ 170; see also id. ¶¶ 214, 242, 262 (alleging same

as to Walnut Construction under Counts XIII, XVII, and XX).

Sunlight's use of identical language in different

counts respecting different entities concerning different time

periods suggests, by itself, that these allegations fail to

include sufficient specificity to raise the expectation that

discovery will reveal evidence supporting these allegations, as

Phillips requires.  515 F.3d at 234.  The allegations themselves

confirm this conclusion.  As in Shenango, "[t]here is no

recitation of any facts regarding the time, place or manner of

actual conduct that would support" Sunlight's allegations.  2007

WL 2310869, at *2.  Also as in Shenango, Sunlight's threadbare

and conclusory allegations are insufficient to state a claim

against Turchi for veil-piercing.  We will accordingly dismiss Counts VII, XIII, XVII, and XX to the extent they seek to pierce the veil against Turchi.[17]

### F.  Sunlight's "Direct" Claims Against Turchi, Inc.

Regarding Counts IV, VI, and XV, the defendants claim that "[b]ecause Turchi, Inc. is not a party to the contracts Sunlight had with either 23S23 or Walnut Construction Corp. Turchi, Inc. cannot be held liable on a breach of contract claim relating to either agreement."  Defs.' Mem. at 17.  Defendants also aver that "to the extent Counts IV, VI, XV and XVI[18] are intended to be brought under the Pennsylvania Contractor [and] Subcontractor Payment Act the Complaint has not alleged that Turchi, Inc. was either an owner, contractor or subcontractor of

_____

[17] Defendants suggest that Turchi "is entitled to judgment on Counts VI, XIII, XVII and XX because Sunlight failed to plead any claim for piercing the corporate veil or alter ego liability," Def.'s Mem. at 14 (some capitalization omitted), but, as defendants themselves observe, each of these counts also includes a claim for fraud against Turchi.  Id. at 4-5 (summarizing claims contained in each count of Sunlight's complaint).  Because defendants have not discussed these fraud claims in their motion, we will dismiss the relevant counts only in part, as to the veil-piercing claims.

[18] As Sunlight points out, defendants refer to Count XVI in error, since Turchi, Inc. is not a named defendant in that count.  See Pl.'s Br. at 17 n.4; Pl.'s Compl. at 43.

the projects at 23 South 23rd St., or 1930-34 Chestnut Street."
Id. at 18.  In response, Sunlight explains that each of the
counts at issue alleges that Sunlight performed work at the
direction of Turchi, Inc.'s representatives, and that under the
Contractor and Subcontractor Payment Act ("the Act"), 73 P.S. §
501, et seq., "Turchi, Inc. has liability to pay Sunlight for the
work which it 'ordered' to be performed, even if Turchi, Inc. was
acting as an 'agent.'"  Pl.'s Br. at 18.

As the Pennsylvania Superior Court has explained, "[i]t
is fundamental contract law that one cannot breach a contract
that one is not a party to." Electron Energy Corp. v. Short, 597
A.2d 175, 178 (Pa. Super. 1991).  Since Sunlight has not alleged
that Turchi, Inc. was a party to the contracts Sunlight concluded
regarding the 23 South 23rd Street[19] or 1930-34 Chestnut Street
projects, we must dismiss Counts IV, VI, and XV[20] to the extent
they assert claims for breach of contract against Turchi, Inc.

---

[19] While Sunlight alleges that it provided its original
written proposal concerning the work at 23 South 23rd Street to
Turchi, Inc. on October 27, 2004, and that Turchi, Inc. accepted
this proposal on November 5, 2004, Pl.'s Compl. ¶¶ 28-29, it
makes no claim that a contract existed between it and Turchi,
Inc. at this time or any other time.

[20] We dismiss these claims only to the extent that we
have not already ruled that they are barred by the applicable
statute of limitations.  See Section II.B.

It is not clear that these counts actually advance breach of contract claims, and this lack of clarity is largely attributable to Sunlight's insistence on eschewing "labels and conclusions" and its consequent refusal to identify the claims under each count.  As defendants point out, each count seeks damages "in accordance with 73 P.S. § 501 et seq.," Pl.'s Compl. at 25, 28, 43, suggesting that Sunlight brings these claims under the Act -- though Sunlight actually includes similar language in all but five of its counts.[21]  In any case, it is true, as Sunlight explains, that 73 P.S. § 502 defines an "owner" as "[a] person who has an interest in the real property that is improved and who ordered the improvement to be made.  The term includes successors in interest of the owner and agents of the owner acting with their authority."  Sunlight alleges that Turchi, Inc. directed that Sunlight make certain improvements to 23 South 23rd Street, Pl.'s Compl. ¶¶ 40, 45, 62, and 1930-34 Chestnut Street, id. ¶¶ 91, 97, 108, so these allegations, if taken as true, would appear to qualify Turchi, Inc. as an "owner" under the Act.

But in yet another reprise of a familiar theme, Sunlight's allegations in this respect appear to be conclusory.

--------

[21] Counts V, XII, XVI, XIX, and XXI contain no mention of "73 P.S. § 501 et seq."  Pl.'s Compl. at 27, 38, 44, 49, 59.

For example, Sunlight suggests, without proffering further detail, that "[a]ll of the extra and additional work performed and completed by Sunlight Electrical at, on and about the 23 South 23rd Street Project was at the direction and with the knowledge and approval of one or more authorized representatives of 23S23, or Hunter Roberts, or Turchi, Inc., or Carriage House Condominiums, L.P., or Carriage House Condominiums, G.P." Id. ¶ 40. It is impossible for us to tell whether such an allegation is based on actual directions received from actual authorized representatives of the named entities, or whether Sunlight merely took a generic allegation concerning such directions and inserted the names of each entity which it seeks to hold liable. Sunlight has thus not raised in us the "reasonable expectation that discovery will reveal evidence of the necessary element." Phillips, 515 F.3d at 234 (quotation marks omitted). Moreover, though Sunlight suggests that Turchi, Inc. is liable under the Act, it does not explain why this is so. While our own examination of the Act suggests that it provides that "[p]erformance by a contractor or a subcontractor in accordance with the provisions of a contract shall entitle the contractor or subcontractor to payment from the party with whom the contractor or subcontractor has contracted," 73 P.S. § 504, we have found no

provision in the Act imposing liability on a third party to a contract for work not specified in the contract.

Though defendants claim that Sunlight "has not alleged that Turchi, Inc. was either an owner, contractor or subcontractor", Defs.' Mem. at 18, of the given projects, defendants do not argue in their motion either that (1) Sunlight's allegations as to Turchi, Inc.'s qualification as an "owner" under the Act are conclusory, or (2) Sunlight fails to state a claim for liability under the Act.  "Sua sponte dismissal of a claim is disfavored and inappropriate unless the basis for dismissal is apparent from the fac[e] of the complaint," Giles v. Volvo Trucks N. Am., 551 F. Supp. 2d 359, 369 (M.D. Pa. 2008) (Kane, C.J.) (citing Ray v. Kertes, 285 F.3d 287, 297 (3d Cir. 2002)), and "[b]efore sua sponte dismissal is appropriate . . . a Court must give a plaintiff notice and an opportunity to be heard on the legal viability of his complaint." Id. (citing Dougherty v. Harper's Magazine Co., 537 F.2d 758, 761 (3d Cir. 1976)).

We will therefore afford Sunlight the opportunity to file a brief explaining how its complaint succeeds in stating a claim for liability under the Act against Turchi, Inc. in Counts IV, VI, and XV.  We will, however, dismiss these counts against

Turchi, Inc. insofar as they advance claims for breach of
contract.

                        BY THE COURT:


                        __\s\Stewart Dalzell